IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BYRON F. DAVID, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00721 (RDA/JFA) |
| | ) | |
| SUMMIT COMMUNITY BANK, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Appellant Byron F. David's ("Appellant") appeal of the United States Bankruptcy Court for the Eastern District of Virginia's ("Bankruptcy Court") "Order Denying [Appellant's] Second Motion to Alter or Amend Judgment" ("Order Denying Second Motion to Amend"). *See* Dkt. 1; *see also In re David*, No. 18-12396, Dkt. 234 (Bankr. E.D. Va. June 12, 2020). The Court dispenses with oral argument because it would not aid in the decisional process. Loc. Civ. R. 7(J); Fed. R. Civ. P. 78. Accordingly, this matter is now fully briefed and ripe for decision. Considering Appellant's Brief (Dkt. 5), Appellee Summit Community Bank's Opposition (Dkt. 6), and Appellant's Reply (Dkt. 7), it is hereby ORDERED that the judgment of the Bankruptcy Court as to the issues presented in this appeal is AFFIRMED in part, REVERSED in part, and REMANDED to modify the judgment consistent with the instruction below.

### I.  BACKGROUND

#### A.  Procedural Background

On July 10, 2018, Appellant filed a Chapter Seven bankruptcy petition with the Bankruptcy Court. Dkt. 5-13, 157. Thereafter, Appellee filed the five Claims against

1

Appellant's bankruptcy estate—Claim Numbers 3-3, 4-3, 5-3, 6-3, and 7-3.  *Id*. at 17-64.  Appellant objected to each of those Claims.  *Id*. at 81-98.  On April 10, 2019, the Bankruptcy Court converted Appellant's Chapter Seven bankruptcy action to one under Chapter 11.  *Id*. at 10.

Subsequently, Appellant filed a Motion of Summary Judgment with the Bankruptcy Court, which Appellee opposed, and the Bankruptcy Court denied.  Dkt. Nos. 5-1, 87-120; 5-5, 52-78; 5-12, 110-11.  After denying Appellant's Motion for Summary Judgment, on October 9, 2019, the Bankruptcy Court held an Evidentiary Hearing on Appellant's Objections to Appellee's Claims.  Dkt. Nos. 5-12, 163-189; 5-13, 1-154.

### B.  Factual Background

At the Evidentiary Hearing, it was established that on July 6, 1991, Appellant married Lisa David ("Ms. David").  Dkt. 5-13, 7.  On August 29, 2012, Ms. David took her life following a conversation that she and Appellant had regarding finances.  *Id*. at 8-11.

From 2004 to 2012, Appellant partially owned Blue Ridge Technical Services, Incorporated ("BRTS"), which provided "consulting network services."  *Id*. at 6-7.  And from 2005 until her death in 2012, Ms. David also worked for BRTS.  *Id*. at 8.  There, she "wrote [BRTS's] . . . tax returns," handled "expense checks[,]" and "help[ed] [ ] review contracts . . . [and] benefits."  *Id*.  In addition to those responsibilities, Ms. David was involved in three real estate ventures (the "David Entities"), in which Appellant seemed to have had no involvement.  *Id*. at 15-17.

Over a period of time, Appellee issued five loans to the David Entities, which formed the basis of the dispute before the Bankruptcy Court.  The chart below sets forth the loans that

Appellee issued to the David Entities and to which Appellee filed Claims during the pendency of the bankruptcy proceedings. Dkt. 5-1, 17-64.

| Loan Number | Date of Loan Agreement | Entity to which Loan was Issued | Principle Loan Amount | Related Claim Number |
|---|---|---|---|---|
| **359186** | September 15, 2005 | David-Cantrall and Associates, Inc. | $2,160,000.00 | Claim 3-3 |
| **358003** | June 27, 2005 | David-Cantrall and Associates, Inc. | $300,000.00 | Claim 4-3 |
| **358367** | July 15, 2005 | DCF I, LLC | $660,000.00 | Claim 5-3 |
| **360540** | January 5, 2006 | David-Cantrall and Associates, Inc. | $300,000.00 | Claim 6-3 |
| **362232** | April 28, 2006 | Luck Homes, LLC | $199,750.00 | Claim 7-3 |

According to Appellant, he did not know about the loans until after Ms. David died. Dkt. 5-13, 17-18. However, Appellee maintained that Appellant was listed as the guarantor for each of the loans, as reflected by a series of notary-acknowledged Guarantees and Allonges.[1] *See e.g.*, *id*. at 134-35. During the Evidentiary Hearing, Appellant called Victoria Melby ("Ms. Melby")[2] and Kerry Self ("Ms. Self"), who Appellee contended were two of the notaries that acknowledged the documents supporting its Claims. *Id*. at 132-34. Ms. Self and Ms. Melby testified that they did not recall those specific documents or remember seeing Appellant sign those documents on the particular days in question. In light of Ms. Self's and Ms. Melby's testimony, Appellant maintained that he did not sign the Guarantees and Allonges that supported

---

[1] The Allonges and Guarantees in this case appear to have been an agreement that certain terms of the loans that are at issue would be modified.

[2] In some instances in the record, Ms. Melby is referred to as "Victoria DeMeza," as "DeMeza" was her maiden name. For consistency, throughout this Opinion, this Court will refer to her as Ms. Melby.

3

Appellee's Claims and contended that Ms. David forged his signature on the Allonges and Guarantees without his knowledge. *Id*. at 144.

In further support of his theory, Appellant also called Ellen G. LoCascio ("Ms. LoCascio"), a retired Central Intelligence Agency ("CIA") officer and long-time family friend of Appellant and Ms. David. Dkt. 5-12, 212. Ms. LoCascio testified that she went to Appellant's home on August 29, 2012, after she learned that Ms. David had died. *Id*. at 213-14. Ms. LoCascio further explained that after learning that Ms. David had taken her life, she "started going through [ ] [Ms. David's] professional and personal things" in an effort to determine why she had done so. *Id*. at 214. Upon doing so, she observed "hundreds of documents" that were "shredded" in Ms. David's home office. *Id*. at 215. Many of the documents, Ms. LoCascio claimed, were "altered and manipulated" and in Ms. LoCascio's opinion, it appeared that someone had "cut and paste" certain documents. *Id*. Among other items, Ms. LoCascio recalled seeing papers that concerned "six or seven property loans," and certain BRTS "technical documents" that had been altered. *Id*. Appellant argued that LoCascio's testimony supported a finding of fraud. Dkt. 5-13, 146.

At the conclusion of the Evidentiary Hearing, the Bankruptcy Court took the matter under advisement, *id*. at 150, and on January 27, 2020, issued a Memorandum Opinion and Order ("Opinion") concerning Appellant's Objections to Appellee's Claims. *Id*. at 156-170. Therein, the Bankruptcy Court overruled Appellant's Objection to Claim Number 4-3 and sustained his Objections to Claim Numbers 3-3, 5-3, 6-3, and 7-3. *Id*. at 170.

Appellant moved to alter or amend the Bankruptcy Court's determinations twice. *See id*. at 171-89. After those two motions had been briefed, and the Bankruptcy Court conducted a hearing on the Second Motion to Amend, the Bankruptcy Court denied the motions and

Appellant then appealed the Bankruptcy Court's determination as to Claim Number 4-3.  Dkt. 5-3, 171-272.

## II.  STANDARD OF REVIEW

"When reviewing a decision of the Bankruptcy Court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526-27 (E.D. Va. 2010) (citation omitted).  Thus, the district court reviews questions of fact under the "clearly erroneous" standard.  *Id.*  "The clear error standard requires 'a reviewing court [to] ask whether on the entire evidence, it is 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Span*, 789 F.3d 320, 325 (4th Cir. 2015) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (third level quotations and citations omitted)).  Legal conclusions are reviewed *de novo*.  *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). In cases where the issues present mixed questions of law and fact, the Court deploys "a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts."  *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996) (citation omitted).

## III.  ANALYSIS

Appellant raises three issues on appeal.  First, Appellant maintains that the Bankruptcy Court "erred as a matter of law when it held that [ ] [Appellant] failed to satisfy the elements of the [United States Court of Appeals for the] Fourth Circuit's spoliation doctrine[.]"  Dkt. 5, 9. Second, Appellant contends that the Bankruptcy Court committed reversable error when it admitted one of Appellee's exhibits—specifically, the Guarantee tending to support Claim 4-3— into evidence during the Evidentiary Hearing.  *Id.*  Appellee contends that this ruling ran afoul of

Federal Rules of Evidence 1002, 1003, and 901.  *Id*.  Third and finally, Appellant urges that the Bankruptcy Court improperly relied on Appellant's responses to requests for admissions in a state court proceeding in violation of Federal Rule of Evidence 36(b) and Virginia Supreme Court Rule 4:11(b).  *Id*. at 9-10.

The Court will address each of these concerns in turn.

A.  The Spoilation Doctrine

Appellant asserts that the Bankruptcy Court erred as a matter of law when it found that Appellant had not satisfied two of the three spoilation elements set forth by the Fourth Circuit.  Dkt. 5, 10-18.  From Appellant's perspective Appellee's "intentional and purposeful destruction of [ ] [an] original guarant[ee] instrument underlying [ ] [one of] [Appellant's Claims] [ ](if any original ever existed) constituted sanctionable spoilation of evidence."  *Id*. at 10.

Appellee opposes this argument in two respects.  *See* Dkt. 6, 21-33.  As an initial matter, Appellee reasons that this Court lacks jurisdiction to consider Appellant's spoilation argument because this specific issue was not preserved for appeal.  *Id*.  Appellee notes that this matter was neither raised in Appellant's Second Motion to Alter or Amend Judgment nor addressed in the Bankruptcy Court's June 12, 2020 Order, which is the Order that Appellant has noticed for appeal.  *Id*.  Therefore, Appellee reasons that these deficiencies create a jurisdictional issue and the spoilation question is not properly before this Court.  *Id*.

Additionally, Appellee explains that even if the spoilation question were properly before the Court, Appellant's substantive argument fails because the Bankruptcy Court did not clearly err in its findings of law and the application of the law to the facts presented at the Evidentiary Hearing.  *Id*.  As such, Appellee concludes that should this Court reach the merits of the spoilation issue, the Court should still reject Appellant's argument.  *Id*.

6

1. Whether the Spoliation Issue is Properly Before this Court

This Court will first address Appellee's jurisdictional concerns. Federal Rule of Civil Procedure 59(e) allows a party to move to alter or amend a judgment. Fed. R. Civ. 59(e). The Supreme Court of the United States in *Banister v. Davis* recently explained that:

> [t]he filing of a Rule 59(e) motion within the 28-day period "suspends the finality of the original judgment" for purposes of an appeal. *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 373, n.10 (1984) (internal quotation marks and alterations omitted). Without such a motion, a litigant must take an appeal no later than 30 days from the district court's entry of judgment. *See* Fed. Rule App. Proc. (FRAP) 4(a)(1)(A). But if he timely submits a Rule 59(e) motion, there is no longer a final judgment to appeal from. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). Only the disposition of that motion "restores th[e] finality" of the original judgment, thus starting the 30-day appeal clock. *League of Women Voters*, 468 U.S. at 373, n.10 (internal quotation marks omitted); *see* FRAP 4(a)(4)(A)(iv) (A party's "time to file an appeal runs" from "the entry of the order disposing of the [Rule 59(e)] motion"). And if an appeal follows, the ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment. *See* 11 Wright & Miller § 2818, at 246; *Foman v. Davis*, 371 U.S. 178, 181 (1962). The court thus addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision.

140 S. Ct. 1698, 1703 (2020).

Here, on January 27, 2020, the Bankruptcy Court entered an Opinion that addressed the Appellant's Objections to Appellee's Claims. In that Opinion, the Bankruptcy Court considered Appellant's spoliation argument. *See* Dkt. 5-13, 165-66. Two weeks later, Appellant moved to alter or amend the judgment contained within the Bankruptcy Court's Opinion, arguing, in part, that the Bankruptcy Court "erred when [it applied] [ ] the Fourth Circuit's spoliation doctrine and [in] finding that the facts presented did not justify that doctrine." *See id*. at 173. The Bankruptcy Court rejected Appellant's claim. *See id*. at 218 ("The [Bankruptcy] Court will not expand the spoliation doctrine to include 'inherently litigious documents' in this case."). After that ruling, Appellee filed his Second Motion to Alter or Amend Order Denying Motion to Alter or Amend Judgment ("Second Motion to Amend"), and perhaps realizing that the issue had already been

considered and decided, did not advance his spoliation argument an additional time. *Id*. at 219-30. Accordingly, the Bankruptcy Court did not address for a third time the issue of spoliation in denying Appellant's Second Motion to Amend. *Id*. at 244-46.

Appellee stresses that the spoliation issue is not properly before this Court because Appellant has noticed this appeal as to the Bankruptcy Court's Order Denying Second Motion to Amend. Dkt. 6, 21. However, Appellee's argument on this point fails to appreciate that "the ruling on [ ] [a] Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment." *Banister*, 140 S. Ct. at 1703 (citing 11 Wright & Miller § 2818, at 246; *Foman*, 371 U.S. at 181). Therefore, because Appellant has appealed the Bankruptcy Court's Order denying his Second Motion to Amend, that ruling merges with the prior determination under Rules 59(e), and thus this Court may address the Bankruptcy Court's decision on the question of spoliation. *Banister*, 140 S. Ct. at 1703. Accordingly, the spoliation issue is properly before the Court.

2. Whether the Bankruptcy Court Erred in its Spoliation Determinations

Notwithstanding that this Court has the power to address the arguments regarding spoliation, this Court finds that Appellant's substantive spoliation argument is without merit. As a threshold merits matter, this Court notes that Appellant describes his spoliation challenge as a question of law. Dkt. 5, 9. And to the extent that Appellant contends that the Bankruptcy Court applied the wrong standard as to one of the spoliation elements, *see id*. at 13-14, and that as a legal matter, all loan guarantees should be preserved essentially into perpetuity, *see id*. at 12-13, the spoliation issue does indeed present a legal question. The Court will review the legal issue *de novo*.

"Spoliation is [defined as] 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). That doctrine is a principle of evidence "and thus is 'administered at the discretion of the trial court.'" *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995)). Accordingly, the Fourth Circuit has determined that "the refusal to apply a spoliation inference must stand unless it was an abuse of the [ ] [trial] court's broad discretion[.]" *Hodge*, 360 F.3d at 450 (internal quotations and citations omitted). The Court observes that Appellant, in part, takes issue with the Bankruptcy Court's application of the spoliation doctrine to the facts of this particular case. Accordingly, this Court assess whether the Bankruptcy Court "abuse[d] . . . [its] broad discretion[.]" *Id*. (internal quotations and citations omitted).

The parties seem to agree that district courts within the Fourth Circuit require that to prove spoliation, a party must demonstrate that:

> "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it."

Dkt. Nos. 6; 7 (both parties citing *Goodman*, 632 F. Supp. 2d at 509). Appellant challenges the Bankruptcy Court's finding as to the first and second elements. Dkt. 5, 12-15.

As for the first element, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party *reasonably* should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591

(emphasis added).  To be sure, "litigants are not required to preserve every shred of paper, every e-mail or electronic document, and every back up tape." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. July 21, 2011) (internal quotations and citations omitted). However, when a party anticipates litigation, it is duty bound to "preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request."  *Id*. at 496 (internal quotations and citation omitted).

Here, this Court finds that the Bankruptcy Court did not err in finding that Appellee "had no duty to preserve the guarantees in perpetuity[,]" Dkt. 5-13, 165.  The record reflects that around the time that the loans in question were issued, Appellee's policy was to retain the original versions of notes and deeds of trust, scan and maintain electronic copies of other loan documents, and shred the other loan documents, including guarantees, so that Appellee did not have to "keep[ ] all [of] those papers." Dkt. 5-12, 190.  Apparently, this was Appellee's policy for all loan documents—not just the Guarantee in question.  *Id*.  And while Appellee could not establish with certainty precisely when the Guarantee in question was destroyed, Appellant's typical policy was to scan and shred supplemental loan documents within a month of them having been signed. *Id*. at 192.

Appellant suggests that by virtue of the fact that the document in question was a guarantee, Appellee had an eternal duty to maintain that document as "the inherent nature and purpose of a guarantee is to enforce the repayment of a debt in a court of law." Dkt. 5, 12.  But that is not the law, *see E.I. du Pont de Nemours & Co.*, 803 F. Supp. 2d at 497, and this Court declines to stretch the contours of the spoliation doctrine that broadly to establish what  would

essentially be a bright-line rule. In this case, where the Guarantee at issue was apparently signed in 2005, and where this litigation did not even commence until 2018, this Court finds that the Bankruptcy Court did not err with respect to its finding as to the first spoliation element.

As for the second spoliation element, this Court finds that the Bankruptcy Court erred with respect to its statement of the law but despite this error. Indeed, as this Court indicated in *E.I. du Pont de Nemours & Co.*:

> [o]nce a court concludes that a party was obliged to preserve relevant materials and documents, it must then consider whether the party breached this obligation, either by failing to preserve, or by destroying or altering, relevant materials or documents *with a culpable state of mind. In the Fourth Circuit, any level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence, suffices to support a finding of spoliation*.

803 F. Supp. 2d at 497 (emphasis added) (collecting cases). Yet, the Bankruptcy Court determined that its "inherent authority may only be exercised to sanction 'bad-faith conduct' . . . ." Dkt. 5-13, 166. Thus, it seems that the Bankruptcy Court found that bad faith is the only basis of liability under spoliation doctrine. However, given that the Bankruptcy Court properly found that Appellant did not satisfy the first spoliation element, the propriety of the Bankruptcy Court's finding regarding this second element is of no consequence because all three elements must be satisfied to prove spoliation. Because Appellant failed to establish that Appellee had a duty to preserve the document in question, the Bankruptcy Court's error as to the requisite mental state does not alter the ultimate outcome on the issue of spoliation.

B. Admission of the Claim 4-3 Guarantee

Next, Appellant contends that "the Bankruptcy Court erred in admitting into evidence the Claim 4-3 Guarantee in violation of" Federal Rules of Evidence 1002 and 1003 and that the Bankruptcy Court also erred when it "admitted that instrument into evidence without authentication as required by" Federal Rule of Evidence 901. Dkt. 5, 18.

11

The Bankruptcy Court's evidentiary rulings are reviewed under an abuse of discretion standard.  *See United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014) (citing *United States v. Hornsby*, 666 F.3d 296, 307 (4th Cir. 2012)).  Under that standard, this Court "'will only overturn [a] ruling that is arbitrary and irrational.'"  *Hassan*, 742 F.3d at 130 (quoting *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011)).

Article 10 of the Federal Rules of Evidence generally addresses the admission of the contents of certain writings, recordings, and photographs.  Along this vein, Rule 1002 indicates that "[a]n original writing, recording, or photograph is required in order to prove its content *unless the[ ] rules or a federal statute provides otherwise*."  Fed. R. Evid. 1002 (emphasis added).  Thus, Rule 1002, standing alone, could not bar the admissibility of the Claim 4-3 Guarantee if another Federal Rule of Evidence allows for its admission.  Indeed, other evidentiary rules permit the document to be admitted: "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003.  Also, "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if [ ] all the originals are lost or destroyed, and not by the proponent acting in bad faith . . ."  Fed. R. Evid. 1004.

Here, in light of Federal Rule of Evidence 1004, this Court finds that the Bankruptcy Court did not err in admitting the Guarantee supporting Claim 4-3.  Although it was not the original Guarantee, the evidence reflected that the original was destroyed and that Appellee did not destroy that document in bad faith.  As set forth above (*supra*, p. 10-11), the original version of the Guarantee at issue was destroyed, as a matter of business course, years before litigation commenced pursuant to Appellee's policies.  Thus, the Bankruptcy Court did not err in finding

12

that Appellee did not act in bad faith. Accordingly, the copy of the Claim 4-3 Guarantee was admissible under Rule 1004.

Also, the Bankruptcy Court did not err in admitting the Claim 4-3 Guarantee pursuant to Rule 1003. Indeed, when the case was before the Bankruptcy Court, Appellant objected as to the authenticity of the Claim 4-3 Guarantee, and expresses on appeal why, from his perspective, the authenticity of the Claim 4-3 Guarantee is dubious. Appellant maintains that his objections to the admission of the Claim 4-3 Guarantee created a "genuine question" regarding "the original's authenticity" and that because the Bankruptcy Court found some of the documents supporting Appellee's Claims to be fabricated, "the circumstances ma[d]e it unfair to admit the duplicate." Dkt. 5, 18-29 (citing Fed. R. Evid. 1003). Yet, Appellant's concerns go to the weight of the evidence, and not its admissibility. *See e.g.*, *Tinley v. Poly-Triplex Techs., Inc.*, No. 07-CV-01136, 2009 WL 812150, at * 7 (D. Colo. Mar. 26, 2009) ("Certainly Defendants may attack the sufficiency of the copy of . . . [a contract] as well as [a] [p]laintiff's credibility, but these questions go to the weight, rather than the admissibility of the evidence."). Moreover, simply because the Bankruptcy Court found that the evidence tended to show that some documents were fabricated while another document was not does not necessarily indicate that the Bankruptcy Court's ruling as to the non-fabricated document was "arbitrary and irrational." This is particularly true where the Bankruptcy Court's ruling was supported by the evidence adduced at the hearing, as demonstrated below (*infra*, p. 14, 16-17).

Rule 901 also provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Below, the Bankruptcy Court explained that in reaching its decision as to the authenticity of the Claim 4-3 Guarantee, it "made

13

factual findings based on the exhibits and the testimony of the experts and the parties in this case" and based upon that, it determined that Appellant, as a matter of fact, signed the Claim 4-3 Guarantee, despite Appellant's argument to the contrary. Dkt. 5-13, 261. The Bankruptcy Court's findings are supported by the record in that Appellee presented evidence that Appellant had, on previous occasions, admitted to signing the Claim 4-3 Guarantee. *See* Dkt. 5-13, 42-44. For example, on cross examination of Appellant, he was impeached as to whether he had ever admitted to signing the Claim 4-3 Guarantee. *See id*. at 41. Appellant initially testified that he had not. *Id*. Then, counsel for Appellee presented several documents suggesting Appellant had previously represented that he had signed the Claim 4-3 Guarantee. *Id*. at 41-45. Notwithstanding this impeachment testimony concerning Appellant's responses to requests for admissions, one of the documents that Appellant was confronted with contained his answers to interrogatories in the *Summit Community Bank v. David Cantrell & Assocs., Inc., et al.*, No. 80949 (Va. Cir. Nov. 1 2013) matter. Dkt. 5-12, 13-19. Appellant testified that he recognized that case and read several statements contained in that document. Dkt. 5-13, 44. The statements that he read included that he (1) "had nothing to do with David Cantrell and Associates, Inc. and [ ] [he] was required to sign a [G]uarantee solely because of [ ] [his] status as spouse[;]" and (2) "[t]o the best of [ ] [his] knowledge, [ ] [he] had only signed one loan guarantee document . . . on June 27th, 2005 . . .," which was the date that the Guarantee in question was signed. *Id*. at 44-45. Accordingly, with respect to this authentication issue, where Appellant essentially claims that the Guarantee was inauthentic because of his concerns about the legitimacy of the signature it contained, this Court finds that the Bankruptcy Court's decision to admit the Claim 4-3 Guarantee was not "arbitrary and irrational." Instead, there was an adequate basis for the Bankruptcy Court, in its discretion, to find that the Claim 4-3 Guarantee was authentic.

14

       C. Reliance on Reponses to Requests for Admissions

  Relatedly, Appellant contends that it was reversible error for the Bankruptcy Court to rely on Appellant's Answers to Requests for Admissions in a separate state court proceeding in violation of both Federal Rule of Civil Procedure 36(b) and Virginia Supreme Court Rule 4:11(b). Dkt. 5, 29. Appellant maintains that this legal issue matters because that admission should not have been admitted to support the Bankruptcy Court's basis for determining that Appellant had previously admitted to signing the Claim 4-3 Guarantee. *Id*. at 31.

  At the outset, the Court notes that this issue ultimately presents an evidentiary question: whether the Bankruptcy Court erred during the Evidentiary Hearing when it admitted into evidence Appellant's admission from another case before the same court. In light of this, it bears repeating that evidentiary rulings are reviewed for an abuse of discretion. *See Hassan*, 742 F.3d at 130 (citing *Hornsby*, 666 F.3d at 307). Accordingly, this Court "'will only overturn [a] ruling that is arbitrary and irrational.'" *Hassan*, 742 F.3d at 130 (quoting *Cole*, 631 F.3d at 153).

  Federal Rule of Civil Procedure 36 governs requests for admission. Section B of that Rule provides, in relevant part, that "[a]n admission under [ ] [R]ule [36] is not an admission for any other purpose and cannot be used against the party in any other proceeding." Fed. R. Civ. 36(b). The Court finds that the plain language of Federal Rule of Civil Procedure 36(b) does not suggest an exception to the general rule—even where a party seeks to use the admission for purposes of impeachment—against admitting a response to an admission into evidence at a proceeding in a separate case. *See id*. And this conclusion is consistent with other courts' findings. *See In re Russo-Chestnut*, 522 B.R. 148, 162-63 (Bankr. D.S.C. 2014) (finding that "courts considering Fed. R. Civ. P. 36 . . . have held that a judgment based solely on deemed admissions cannot be a bar in a later proceeding under the express language of Rule 36, which

15

provides that '[a]n admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding'") (collecting cases).

Interestingly, Appellee does not squarely address why Rule 36 would permit Appellant's admission to be admitted into evidence during the Evidentiary Hearing. *See* Dkt. 6, 36-40. Instead, Appellee focuses his argument on why Virginia Supreme Court Rule 4:11(b) would not preclude Appellant's admission from being admitted into evidence. *Id*.

Assuming that the Virginia Supreme Court Rules apply to the Bankruptcy Court proceedings—and to be sure, neither party argues that those Rules are inapplicable—the Court observes that Virginia Supreme Court Rule 4:11 provides that:

> [a] party may serve upon any other party a written request for the admission, *for purposes of the pending action only*, of the truth of any matters within the scope of Rule 4:1(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request.

Va. Sup. Ct. R. 4:11(a) (emphasis added).  Yet, Virginia Supreme Court Rule 4:0(b) indicates that "[n]o provision of any of the Rules in this Part Four affects the practice *of taking evidence at a trial in any action. . . .*" Va. Sup. Ct. R. 4:0(b).  Thus, it seems that circumstances such as those this case presents are excepted from Virginia Supreme Court Rule 4:11(a).  The Court finds Appellee's argument compelling on this point and finds that although Appellant's admission should have been barred under Federal Rule of Civil Procedure 36(b), Virginia Supreme Court Rule 4:11(a) does not render his admission inadmissible.

Even so, there was an abundance of evidence suggesting that Appellant signed the Guarantee supporting Claim 4-3.  Furthermore, the Bankruptcy Court's decision as to Claim 4-3 did not rely solely on Appellant's admission.  As set forth above (*supra*, p. 14), Appellant had previously responded to multiple interrogatories suggesting that he had signed the Guarantee

supporting Claim 4-3. And Appellant's own expert witness testified that the signature on the Guarantee supporting Claim 4-3 was "probably [Appellant's] signature." Dkt. 5-13, 256.

So while under Federal Rule of Civil Procedure 36(b) it may have been error to admit Appellant's state court admission, ultimately, the record supports the Bankruptcy Court's "factual findings based on the exhibits and the testimony of the experts and the parties in this case[.]"

## IV.  CONCLUSION

Accordingly, for the reasons provided above, the Bankruptcy Court's judgment as to the issues raised in this appeal is AFFIRMED in part, REVERSED in part, and REMANDED to modify the judgment consistent with the instruction above.

It is SO ORDERED.

Alexandria, Virginia
May 4, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge